# No. 13-4850

UNITED STATES COURT OF APPEALS
FOR THE SECOND CIRCUIT

JONATHAN B. KREISBERG, Regional Director of Region 34 of the National Labor Relations Board, for and on behalf of the NATIONAL LABOR RELATIONS BOARD, Petitioner-Appellee,

v.

HEALTHBRIDGE MANAGEMENT, LLC, Respondent-Appellant.

——————————————————

ON APPEAL FROM AN ORDER OF THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF CONNECTICUT

——————————————————

BRIEF FOR PETITIONER-APPELLEE
NATIONAL LABOR RELATIONS BOARD

——————————————————

RICHARD F. GRIFFIN, JR.
    General Counsel
JENNIFER ABRUZZO
    Deputy General Counsel
BARRY J. KEARNEY
    Associate General Counsel
JAYME L. SOPHIR
    Deputy Associate General Counsel
ELINOR L. MERBERG
    Assistant General Counsel
LAURA T. VAZQUEZ
    Deputy Assistant General Counsel

JOEL A. HELLER
KEVIN P. FLANAGAN
MARISSA A. WAGNER
    Attorneys

NATIONAL LABOR RELATIONS BOARD
1099 14th Street, N.W.
Washington, D.C. 20570-0001
(202) 273-1042

# TABLE OF CONTENTS

COUNTERSTATEMENT OF JURISDICTION ......................................................1

COUNTERSTATEMENT OF THE ISSUES..............................................................1

COUNTERSTATEMENT OF THE CASE.................................................................3

    A. Background; HealthBridge Determines Terms and Conditions of Employment for the Healthcare Centers That it Manages...........................3

    B. HealthBridge and the Centers Unlawfully Alter Terms and Conditions of Employment.................................................................................................4

    C. The District Court Orders HealthBridge and the Centers to Reinstate the Unilaterally Changed Terms and Conditions..........................................6

    D. The Centers, but not HealthBridge, Seek Bankruptcy Relief .....................8

    E. The District Court Holds HealthBridge in Contempt for not Complying with the 10(j) Injunction Order ...................................................................9

    F. The Bankruptcy Court Confirms the Centers' Reorganization Plan ..........10

SUMMARY OF THE ARGUMENT .....................................................................12

ARGUMENT ........................................................................................................14

    I. Standard of Review .....................................................................................14

    II. This Court Lacks Jurisdiction to Hear HealthBridge's Appeal of a Non-Final Order ...............................................................................................15

    III. The District Court Did Not Abuse Its Discretion In Holding HealthBridge in Contempt ........................................................................21

        A. The Injunction Was Clear and Unambiguous .............................................22

           1. HealthBridge's obligation was clear from the plain text of the injunction order ......................................................................................22

2.  HealthBridge's status as a joint employer made clear its obligation under the injunction to reinstate terms that it already had a statutory duty to maintain ...................................................................................25

3.  HealthBridge's arguments regarding the status quo are contrary to the record and irrelevant................................................................................29

4.  HealthBridge cannot use the contempt proceedings to challenge the underlying injunction.................................................................................31

B.  HealthBridge Has Not Even Attempted To Reinstate the Pre-Implementation Terms and Conditions of Employment ............................34

IV.  The Bankruptcy-Court Rulings In the Centers' Bankruptcy Proceedings Do Not Require Reversal of the Contempt Order.......................................37

A.  The § 1113(e) and (c) Orders Did Not Affect HealthBridge's Obligations Under the Injunction ...............................................................37

B.  This Court Should Decline to Pass in the First Instance on the Impact of the Confirmation Order Because its Lawfulness Is Now on Appeal to Another Court; Instead, this Portion of the Instant Appeal Should Be Remanded to the District Court Pending Resolution of the Bankruptcy Appeal ...........................................................................................................44

CONCLUSION .....................................................................................................48

# TABLE OF AUTHORITIES

## CASES

*Alexander v. Sandoval*,
532 U.S. 275 (2001) ............................................................43

*American Air Filter Co.*,
258 NLRB 49 (1981) ................................................... 27, 28

*Aspira of New York, Inc. v. Bd. of Educ. of the City of New York*,
423 F. Supp. 647 (S.D.N.Y. 1976) ............................... 34, 35

*AT&T v. NLRB*,
67 F.3d 446 (2d Cir. 1995) .......................................... 27, 28

*Bd. of Governors of the Fed. Reserve Sys. v. MCorp Fin., Inc.*,
502 U.S. 32 (1991) ...................................................... 45, 48

*Clinton's Ditch Coop. Co. v. NLRB*,
778 F.2d 132 (2d Cir. 1985) ..........................................26

*Conn. Bar Ass'n v. United States*,
620 F.3d 81 (2d Cir. 2010) .......................................... 26, 32

*Cook v. Ochsner Found. Hosp.*,
559 F.2d 270 (5th Cir. 1977) .........................................19

*Cunningham v. Hamilton County, Ohio*,
527 U.S. 198 (1999) ......................................................15

*Darlington Mfg. Co. v. NLRB*,
325 F.2d 682 (4th Cir. 1963), ................................. 28, 29, 30

*Derrico v. Sheehan Emergency Hosp.*,
844 F.2d 22 (2d Cir. 1988) ............................................27

*Dove v. Atl. Capital Corp.*,
963 F.2d 15 (2d Cir. 1992) .......................................... 15, 16

*Drywall Tapers, Local 1974 v. Local 530, Operative Plasterers Int'l Ass'n*,
889 F.2d 389 (2d Cir. 1989) ..........................................22

*Dunn v. New York State Dep't of Labor*,
   47 F.3d 485 (2d Cir. 1995) ...................................................................34

*Forschner Group, Inc. v. Arrow Trading Co.*,
   124 F.3d 402 (2d Cir. 1997) ........................................... 15, 16, 17, 20

*G. Heileman Brewing Co. v. NLRB*,
   879 F.2d 1526 (7th Cir. 1989) ...................................................... 26, 28

*Hagans v. Lavine*,
   415 U.S. 528 (1974)...............................................................................43

*HealthBridge Mgmt., LLC v. Kreisberg*,
   133 S. Ct. 1002 (Feb. 6, 2013)...............................................................7

*HealthBridge Mgmt., LLC*,
   2012 WL 3144346 (NLRB Div. of Judges Aug. 1, 2012).....................5

*HealthBridge Mgmt., LLC*,
   2013 WL 5913968 (NLRB Div. of Judges Nov. 1, 2013)....................25

*HealthBridge Mgmt., LLC*,
   360 NLRB No. 118 (2014) ...................................................................25

*In re Fugazy Express, Inc.*,
   982 F.2d 769 (2d Cir. 1992) ......................................................... 15, 16

*In re Goodman*,
   873 F.2d 598 (2d Cir. 1989) .................................................................39

*In re Irving*,
   600 F.2d 1027 (2d Cir. 1979) ...............................................................15

*In re Karykeion, Inc.*,
   435 B.R. 663 (Bankr. C.D. Cal. 2010) .................................................40

*In re Sullivan Motor Delivery, Inc.*,
   56 B.R. 28 (Bankr. E.D. Wis. 1985)....................................................40

*Ingraham v. United States*,
   808 F.2d 1075 (5th Cir. 1987) ..............................................................21

*King v. Allied Vision, Ltd.*,
   65 F.3d 1051 (2d Cir. 1995) .......................................................... 21, 22, 23, 24

*Kreisberg v. HealthBridge Mgmt., LLC*,
   2012 WL 6553103 (D. Conn. Dec. 14, 2012) ........................................7

*Kreisberg v. HealthBridge Mgmt., LLC*,
   732 F.3d 131 (2d Cir. 2013) ................................................................. passim

*Litton Fin. Printing Div. v. NLRB*,
   501 U.S. 190 (1991).................................................................... 27, 40, 42

*Maggio v. Zeitz*,
   333 U.S. 56 (1948)...............................................................................32

*Maldonado v. Flynn*,
   671 F.2d 729 (2d Cir. 1982) ........................................................ 47, 48

*Martin Bush Iron & Metal*,
   329 NLRB 124 (1999) ........................................................................39

*McComb v. Jacksonville Paper Co.*,
   336 U.S. 187 (1949)...................................................................... 21, 33

*Morgan v. United States*,
   968 F.2d 200 (2d Cir. 1992) ................................................... 15, 17, 18

*N.A. Sales Co. v. Chapman Indus. Corp.*,
   736 F.2d 854 (2d Cir. 1984) ..............................................................32

*Nat'l Basketball Ass'n v. Design Mgmt. Consultants, Inc.*,
   289 F. Supp. 2d 373 (S.D.N.Y. 2003) ...............................................33

*New York State Nat'l Org. for Women v. Terry*,
   886 F.2d 1339 (2d Cir. 1989) ..................................................... 34, 35

*NLRB v. 675 West End Owners Corp.*,
   304 F. App'x 911 (2d Cir. 2008)........................................................26

*NLRB v. E.D.P. Med. Computer Sys., Inc.*,
   6 F.3d 951 (2d Cir. 1993) ..................................................................39

*NLRB v. Edward Cooper Painting, Inc.*,
    804 F.2d 934 (6th Cir. 1986) ................................................................39

*NLRB v. Katz*,
    369 U.S. 736 (1962)..............................................................................27

*Northwest Airlines Corp. v. Association of Flight Attendants*,
    483 F.3d 160 (2d Cir. 2007) ..................................................... 41, 42

*O'Hearn v. Bodyonics, Ltd.*,
    56 F. Supp. 2d 302 (E.D.N.Y. 1999) ........................................... 34, 35

*Paramedics Electromedicina Comercial, Ltda. v. GE Med. Sys. Info. Techs., Inc.*,
    369 F.3d 645 (2d Cir. 2004) ................................................................14

*Perez v. Danbury Hosp.*,
    347 F.3d 419 (2d Cir. 2003) ................................................................14

*Powell v. Ward*,
    643 F.2d 924 (2d Cir. 1981) ....................................................... 33, 34

*Republic Natural Gas Co. v. Oklahoma*,
    334 U.S. 62 (1948)................................................................................15

*Shillitani v. United States*,
    384 U.S. 364 (1966)................................................................................3

*Synergy Gas Co. v. Sasso*,
    853 F.2d 59 (2d Cir. 1988) ..................................................................18

*Texas World Serv. Co. v. NLRB*,
    928 F.2d 1426 (5th Cir. 1991) ............................................................26

*TiVo Inc. v. EchoStar Corp.*,
    646 F.3d 869 (Fed. Cir. 2011) ............................................................33

*United States v. O'Rourke*,
    943 F.2d 180 (2d Cir. 1991) ................................................................17

*United States v. Rylander*,
    460 U.S. 752 (1983)..............................................................................26

iv

*Viking Indus. Sec., Inc. v. NLRB*,
225 F.3d 131 (2d Cir. 2000) ......................................................... 28, 29

*Whitewood Maint. Co.*,
292 NLRB 1159 (1989) .............................................................. 26, 28

*Wilder v. Bernstein*,
49 F.3d 69 (2d Cir. 1995) ........................................................... 16, 20

## FEDERAL STATUTES

11 U.S.C. § 1113 ........................................................................ passim

11 U.S.C. § 1113(a) ..........................................................................38

11 U.S.C. § 1113(c) ................................................... 10, 11, 20, 48

11 U.S.C. § 1113(e) ................................................... 8, 9, 42, 43

28 U.S.C. § 1291 ...................................................................... passim

28 U.S.C. § 1292(a)(1) .............................................. 1, 12, 19, 20

28 U.S.C. § 158(d)(2)(B)(i) ........................................... 11, 45

29 U.S.C. § 158(a)(5) .......................................................................26

29 U.S.C. § 158(d) ...........................................................................26

29 U.S.C. § 160(a) ...........................................................................44

29 U.S.C. § 160(j) ................................................................... passim

## RULES

Federal Rule of Civil Procedure 60(b) ........................................ passim

## OTHER AUTHORITIES

18A Charles A. Wright, Arthur R. Miller & Edward H. Cooper, Federal Practice
and Procedure § 4433 (2d ed. 2002) .................................................46

## COUNTERSTATEMENT OF JURISDICTION

HealthBridge Management, LLC ("HealthBridge") appeals from an order of the United States District Court for the District of Connecticut holding it in contempt for failing to comply with an injunction. Because the contempt order did not fully formulate the sanctions against HealthBridge and anticipates further action by the parties and the district court, the order is not final and is not appealable under 28 U.S.C. § 1291. And because the order enforced rather than modified an injunction, it is not appealable under 28 U.S.C. § 1292(a)(1). Accordingly, and as described in more detail below, this Court should dismiss HealthBridge's appeal for lack of appellate jurisdiction.

## COUNTERSTATEMENT OF THE ISSUES

1. The district court's contempt order did not formulate the amount of contempt sanctions in the form of compensatory damages and attorneys' fees and costs. Instead, the order anticipates further action by the parties and the district court to determine these sanctions. In these circumstances, is the contempt order a non-final order over which this Court lacks appellate jurisdiction?

2. The underlying injunction order—affirmed by this Court—clearly and unambiguously directed HealthBridge as a co-Respondent to reinstate the terms and conditions of employment that were in place on June 16, 2012. HealthBridge indisputably made no attempt to comply with that order. Given the clarity of the

1

injunction and HealthBridge's equally clear failure to reinstate the terms, did the district court properly hold HealthBridge in contempt for not complying with the injunction?

3.  HealthBridge, unlike the Centers, did not seek bankruptcy relief. Moreover, HealthBridge's obligation to reinstate terms and conditions of employment stems from the district court's affirmed injunction, rather than from the collective bargaining agreements ("CBAs") supposedly "abrogated" by the Centers' bankruptcy proceedings.  Did the district court properly conclude that, in these circumstances, the § 1113 relief granted to the Centers by the United States Bankruptcy Court for the District of New Jersey did not excuse HealthBridge's failure to comply with the injunction?

4.  The propriety of the bankruptcy court's rulings, including its post-contempt confirmation order and third-party release of HealthBridge, are currently on appeal to another court.  Is it premature for this Court to consider the impact of post-contempt bankruptcy rulings on the district court's contempt order while those bankruptcy rulings are on appeal?[1]

_____

[1] HealthBridge questions, but preserves for later review, the Regional Director's authority to file the contempt petition in the alleged absence of a quorum at the National Labor Relations Board (Appellant Br. 6).  There is no requirement in statute, regulation, or practice that the Board authorize § 10(j) contempt proceedings.  The General Counsel's authority to seek a 10(j) injunction carries with it the ancillary authority to seek contempt for failure to comply with that

2

## COUNTERSTATEMENT OF THE CASE

This appeal is the latest chapter in a longstanding and ongoing dispute between HealthBridge and New England Health Care Employees Union, District 1199 ("District 1199"), and the latest attempt by HealthBridge to avoid complying with an injunction issued in 2012 by the United States District Court for the District of Connecticut and upheld by this Court.

**A.     Background; HealthBridge Determines Terms and Conditions of Employment for the Healthcare Centers That it Manages**

HealthBridge manages sub-acute and long-term healthcare centers in Danbury, Stamford, Newington, Westport, and Milford, Connecticut ("the Centers.").[2]   (JA-89-90.)[3]  As manager of the Centers, HealthBridge developed and implemented a system-wide labor-relations strategy and human-resources policy, as well as assisted the Centers with day-to-day HR matters such as terminations and discipline.  (JA-317, 319-20; JA-360.)  As part of this unified

---

injunction.  Moreover, the availability of contempt proceedings and a contempt adjudication does not depend upon the Board or General Counsel's authority, because "[t]here can be no question that courts have inherent power to enforce compliance with their lawful orders through civil contempt."  *Shillitani v. United States*, 384 U.S. 364, 370 (1966).

Should HealthBridge subsequently raise substantive arguments regarding this issue, the Director requests an opportunity to respond.

[2] HealthBridge managed a sixth healthcare center, in Wethersfield, Connecticut, but it ceased operations in 2012.  (JA-90.)

[3] Citations to JA refer to the Joint Appendix, SPA to the Special Appendix, and SA to the Supplemental Appendix.

strategy, HealthBridge created an HR manual that is used at each facility.  (JA-320-21; JA-360.)  The manual sets forth terms and conditions of employment—including discipline, payroll, sick-leave policy, meal breaks, and overtime—for employees at all HealthBridge facilities.  (JA-460-62; JA-489; JA-531-34; JA-452; JA-491.)  It also details employee benefits such as health insurance and a 401(k) plan.  (JA-501-04; JA-511-12.)

District 1199 represents approximately 700 employees at the Centers.  When HealthBridge began managing the Centers in 2003, it assumed existing CBAs with District 1199.  *Kreisberg v. HealthBridge Mgmt., LLC*, 732 F.3d 131, 134 (2d Cir. 2013).  Each Center subsequently entered into a new CBA with District 1199 that ran from 2004 to 2011.  (JA-51-52.)  The Wethersfield Center's 2010 addendum agreement with District 1199 was signed by Lisa Crutchfield, HealthBridge's Vice President for Human Resources.  (SA-8-10.)  HealthBridge assisted the Centers with interpretation and administration of the CBAs.  (JA-319-20.)

## B. HealthBridge and the Centers Unlawfully Alter Terms and Conditions of Employment

In 2010, District 1199 filed an unfair-labor-practice charge with the National Labor Relations Board ("the Board"), alleging that HealthBridge unilaterally imposed changes to leave and overtime policy at the Centers in violation of the National Labor Relations Act ("NLRA").  An ALJ found that the changes were

4

unlawful. *HealthBridge Mgmt., LLC*, 2012 WL 3144346 (NLRB Div. of Judges Aug. 1, 2012).

Negotiations for new CBAs began in January 2011.  (JA-52.)  HealthBridge officials such as Vice President Lisa Crutchfield and Regional Human Resources Director Ed Remillard participated in the negotiations as members of the bargaining committee representing the Centers.  (JA-320; SA-2-5.)  On June 16, 2012, the lead negotiator on that committee declared that the parties were at impasse and that the terms of the committee's "last, best, and final" proposal would be unilaterally implemented at the Centers the following day.  (JA-52; JA-1074-83.)  This proposal contained substantial modifications to the terms of employment at the Centers, including converting from an eight-hour day with a paid lunch break to a seven-and-a-half-hour day with an unpaid lunch, paying overtime only for hours worked in excess of forty hours per week rather than in excess of eight hours per day, lowering the amount of sick leave that employees could accrue from twelve days to forty-five hours (accrued one hour per week rather than one day per month), requiring employee contributions for health-insurance coverage, cancelling employer contributions to the Union pension and training funds, cancelling the uniform allowance, ending the accrual of personal days, and switching from weekly to bi-weekly pay periods.  (JA-1084-1103.)

5

District 1199 did not consider negotiations to be at impasse, and the employees went on strike to protest the unilateral implementation of new terms and conditions of employment.  (JA-1104-08.)  HealthBridge refused District 1199's offer to return to work under the pre-implementation terms of employment, and replaced all of the striking workers.  (JA-52.)  On July 3, 2012, District 1199 filed another unfair-labor-practice charge with the Board (JA-43-44), based on which the Regional Director ("the Director") of Region 34 issued an administrative complaint (JA-49).

## C.    The District Court Orders HealthBridge and the Centers to Reinstate the Unilaterally Changed Terms and Conditions

On September 7, 2012, the Director petitioned the United States District Court for the District of Connecticut under § 10(j) of the NLRA, 29 U.S.C. § 160(j), for a temporary injunction against HealthBridge and the Centers pending adjudication of the unfair-labor-practice complaint.  (JA-24-40.)  In his petition, the Director alleged, inter alia, that HealthBridge and the Centers were joint employers of the healthcare-center employees (JA-29) and that they unilaterally imposed new terms and conditions of employment without bargaining to impasse in violation of Section 8(a)(5) of the NLRA (JA-25, 34-35).  Finding reasonable cause to believe that the alleged unfair labor practices had occurred "as alleged in the petition" (JA-53) and concluding that injunctive relief was just and proper, the

district court granted the injunction on December 11, 2012. (JA-51-55.) The

injunction ordered, inter alia:

> (1) on or before December 17, 2012, Respondents shall offer every striker
> reinstatement to his or her former position, without prejudice to their
> seniority, rights and privileges previously enjoyed, displacing, if necessary,
> any other employees hired, transferred or reassigned to replace them;
>
> (2) Respondents shall reinstate the previous wages, benefits and other terms
> and conditions of employment for the employees that were in place on June
> 16, 2012, and rescind any or all unilateral changes implemented by
> Respondents;
>
> (3) Respondents shall bargain in good faith with the Union as the exclusive
> collective bargaining representative of the employees;
>
> (4) Respondent shall post copies of this Order at all of its facilities where
> notices to employees are customarily posted, including electronic posting if
> respondent customarily communicates with employees by such means . . . .

(JA-54.)[4] The injunction order defined "Respondents" as "HealthBridge

Management, LLC, together with health care facilities it operates in Connecticut."

(JA-51.)

HealthBridge unsuccessfully sought a stay of the 10(j) injunction with the

district court, this Court, and the Supreme Court. (JA-11-12, Dist. Ct. Dkt. Nos.

50, 54; JA-86-87; *HealthBridge Mgmt., LLC v. Kreisberg*, 133 S. Ct. 1002 (Feb. 6,

2013).) This Court affirmed the injunction on October 15, 2013, *Kreisberg v.*

*HealthBridge Mgmt., LLC*, 732 F.3d 131 (2d Cir. 2013), and denied

---

[4] The district court also issued a memorandum opinion elaborating on its reasons
for issuing the injunction. *Kreisberg v. HealthBridge Mgmt., LLC*, 2012 WL
6553103 (D. Conn. Dec. 14, 2012).

HealthBridge's petition for rehearing en banc on February 26, 2014, *Kreisberg*, No. 12-4890, Dkt. No. 208 (2d Cir. Feb. 26, 2014).

**D.     The Centers, but not HealthBridge, Seek Bankruptcy Relief**

On February 24, 2013—while HealthBridge's appeal of the injunction to this Court was pending— the Centers filed for Chapter 11 bankruptcy in the United States Bankruptcy Court for the District of New Jersey.  (JA-175.)  The next day, the Centers moved under 11 U.S.C. § 1113(e) for authorization to make interim modifications to the terms of the expired CBAs.  (JA-171-94.)  Each modification that the Centers sought to make under § 1113(e) was a change that had been unilaterally implemented on June 17, 2012, and that the district court had ordered rescinded.  (*Compare* JA-104-05 *with* JA-1084-87; *see also* JA-182-83.)  The Board and District 1199 opposed this motion.  (JA-102.)

The Centers requested an expedited hearing on the § 1113(e) motion so that the proposed modifications could be in place before the striking employees returned to work on March 3 and the pre-implementation terms of employment would not have to be reinstated.  (JA-200.)  The bankruptcy court granted the Centers' § 1113(e) motion on March 4, 2013, authorizing the requested modifications through April 12.  (JA-100-24.)  Returning employees received a memorandum informing them that, as of 11pm on March 4, their terms of employment would be set according to the bankruptcy court's § 1113(e) order.

8

(JA-146-53.)  The bankruptcy court extended the interim modifications on April 10, July 15, and November 22.  (JA-128-31; JA-599-602; JA-624-28.)  The Board sought leave to appeal each § 1113(e) order, which the United States District Court for the District of New Jersey ultimately denied.

### E.    The District Court Holds HealthBridge in Contempt for not Complying with the 10(j) Injunction Order

On May 30, 2013, the Director petitioned the district court to hold HealthBridge—which was not a debtor in the bankruptcy proceedings—in contempt for failing to comply with the injunction by failing to reinstate the pre-implementation terms and conditions of employment.  Although the striking employees had returned to work on March 3, 2013, they continued to work under the unilaterally implemented terms.  (*See* JA-146-53.)

The district court granted the Director's petition on December 23, 2013, and held HealthBridge in civil contempt.  (SPA 1-5; SPA 17-20.)  The contempt order directed HealthBridge to comply with all provisions of the injunction, noting specifically that "HealthBridge shall reinstate and maintain the previous wages, benefits, and other terms and conditions of employment for the employees of the Centers that were in place on June 16, 2012."  (SPA-2-3.)  In addition, the court ordered HealthBridge to make the employees whole for the wages and benefits that they did not receive since February 1, 2013 as a result of HealthBridge's failure to

9

reinstate the pre-implementation terms of employment.  The court did not set an

amount of backpay, but instructed HealthBridge to make available to the Director

all business records necessary to determine the amount of pay and benefits to

which the employees were entitled.  (SPA-3.)

The court also directed HealthBridge to post a copy of the contempt order at

each of the Centers in all places where the injunction order was posted, serve

copies to each owner, officer, and management employee of the Centers and

HealthBridge, and file an affidavit of compliance from a responsible corporate

official.  (SPA-3-4.)  If HealthBridge failed to comply with the contempt order, it

would have to pay the Board $10,000 and a daily fee of $500.  Any subsequent

violation of the injunction would result in an additional $5,000 fine.  (SPA-4.)

Finally, the court invited the Director to file a motion for attorneys' fees and costs

and invited HealthBridge to file a memorandum in opposition.  (SPA-4.)

HealthBridge filed a notice of appeal (JA-21-22) and a motion to stay

pending appeal (JA-17, Dist. Ct. Dkt. No. 113).  The district court granted a

temporary stay pending briefing on HealthBridge's motion for a stay pending

appeal.  (JA-18, Dist. Ct. Dkt. No. 114.)

**F.    The Bankruptcy Court Confirms the Centers' Reorganization Plan**

On February 3, 2014, the bankruptcy court approved the Centers'

application under 11 U.S.C. § 1113(c) permanently to reject their statutory

obligation to maintain the terms and conditions of the expired CBAs.  (JA-634-

679.)  Then, on March 6, the bankruptcy court confirmed the Centers' Chapter 11

reorganization plan (JA-718-762; JA-764-813), which granted  non-consensual,

third-party releases to HealthBridge and other corporate affiliates of the Centers

(collectively, the "Releasees") (JA-730).  Consequently, the plan enjoins the Board

from asserting any "claims, obligations, suits, judgments, damages, demands,

debts, rights, causes of action, and liabilities whatsoever" against the Releasees

based upon any occurrence related to the Debtors that occurred prior to the

effective date of the plan.  (JA-730.)  The Board's appeals of the § 1113(c) order

and the confirmation order are currently pending before the United States District

Court for the District of New Jersey.[5]

Following these rulings from the bankruptcy court, HealthBridge filed a

motion for relief from judgment under Federal Rule of Civil Procedure 60(b) with

the district court in Connecticut.  (JA-19, Dist. Ct. Dkt. No. 125.)  On March 27,

the Director moved to have the case held in abeyance pending appeal of the

---

[5] Briefing has not yet commenced.  In the meantime, the Board has moved the
district court in New Jersey for certification for direct appeal of these bankruptcy
orders (and a third order not at issue here) to the Court of Appeals for the Third
Circuit pursuant to 28 U.S.C. § 158(d)(2)(B)(i).  *NLRB v. 710 Long Ridge Road
Operating Co. II, LLC*, No. 14-1725, Dkt. Nos. 32-34 (D.N.J. filed May 22, 2014).
If the district court makes the requested certification and the Third Circuit accepts
the request for direct appeal, the case will be heard and decided by the Third
Circuit.

bankruptcy orders.  (JA-20, Dist. Ct. Dkt. No. 140.)  On May 30, the district court

denied HealthBridge's Rule 60(b) motion, concluding that "the disregard of

judicial authority shown by HealthBridge in failing to comply with the injunction

without first seeking such clarification or modification was sufficiently wrongful to

warrant a finding of contempt."  (Dist. Ct. Dkt. No. 143, at 4-5.)  In the same order,

the court granted a stay of further proceedings pending HealthBridge's appeal of

the contempt order and the Board's appeal of the bankruptcy orders.  *Id.* at 11.

## SUMMARY OF THE ARGUMENT

This Court should dismiss HealthBridge's appeal for lack of appellate

jurisdiction.  Because the district court did not fully formulate contempt sanctions

against HealthBridge and the contempt order anticipates further action by the

parties and the district court, the order is not final and thus is not appealable under

28 U.S.C. § 1291.  And because the order enforced rather than modified an

injunction, it is not appealable under 28 U.S.C. § 1292(a)(1).

If this Court reaches the merits of the appeal, it should affirm the district

court's contempt order.  The district court did not abuse its discretion in holding

HealthBridge in contempt for failure to comply with the injunction's directive to

reinstate the pre-implementation terms and conditions of employment.

HealthBridge's obligation under the injunction was clear and unambiguous, given

that HealthBridge was a named Respondent in the injunction proceedings and the

12

order to reinstate employment terms was directed at "Respondents." HealthBridge's responsibility to reinstate the pre-implementation terms and conditions of employment was also clear and unambiguous given HealthBridge's status as a joint employer of the healthcare-center employees with a statutory obligation to maintain those terms. HealthBridge's assertion that the injunction was unclear because HealthBridge had no responsibility for terms of employment under the status quo ante is contrary to the record and misconstrues the injunction; the district court's specific directive was to reinstate the terms of employment that existed on June 16, 2012. Contempt is also appropriate because HealthBridge has indisputably failed to comply with this aspect of the injunction and has made no attempt, let alone a diligent attempt, to do so. To the extent that HealthBridge is challenging the propriety of the injunction itself, this challenge is too late; contempt proceedings are not an appropriate forum for a collateral attack on the underlying court order.

The bankruptcy-court rulings do not excuse HealthBridge's non-compliance with the injunction and thus are not grounds for reversing the contempt order. HealthBridge was not a debtor in the bankruptcy proceedings, and the bankruptcy court's grant of relief to the Centers under 11 U.S.C. § 1113 by its terms did not apply to HealthBridge; the § 1113 orders thus had no impact on HealthBridge's obligation to restore the pre-implementation terms and conditions of employment.

13

Moreover, this obligation would remain extant regardless of the effect of the §
1113 rulings on the CBAs, because the CBAs are not the source of the obligation.
Abrogation of the CBAs would not correspondingly abrogate HealthBridge's duty
under the injunction to reinstate, or its statutory obligation to maintain, the pre-
implementation terms of employment.  Finally, HealthBridge's request that this
Court vacate the contempt order in light of the releases in the Centers' Chapter 11
reorganization plan is premature; the bankruptcy court's confirmation of that plan
is on appeal and may be reversed by the district court in New Jersey or by the
Third Circuit.  Rather than addressing in the first instance the impact of the
confirmation order on the continued viability of the contempt order, this Court
should remand the issue to the district court with instructions to hold it in abeyance
pending the outcome of the Board's bankruptcy appeal.

## **ARGUMENT**

## I.    **Standard of Review**

  This Court reviews a district court's finding of contempt for abuse of
discretion.  *Paramedics Electromedicina Comercial, Ltda. v. GE Med. Sys. Info.
Techs., Inc.*, 369 F.3d 645, 655 (2d Cir. 2004).  The district court's factual findings
are reviewed for clear error.  *Perez v. Danbury Hosp.*, 347 F.3d 419, 423 (2d Cir.
2003).

## II.    This Court Lacks Jurisdiction to Hear HealthBridge's Appeal of a Non-Final Order

As a general matter, this Court has jurisdiction to hear appeals only from final decisions.  28 U.S.C. § 1291.  A district-court decision is final if it "conclusively determines the rights of the parties to the litigation, leaving nothing for the district court to do but execute the order."  *In re Fugazy Express, Inc.*, 982 F.2d 769, 775 (2d Cir. 1992).  For example, "where liability has been decided but the extent of damages remains undetermined, there is no final order."  *Forschner Group, Inc. v. Arrow Trading Co.*, 124 F.3d 402, 410 (2d Cir. 1997) (citing *Republic Natural Gas Co. v. Oklahoma*, 334 U.S. 62, 68 (1948)).  The rationale for limiting appellate jurisdiction to final decisions is to avoid piecemeal litigation in which different aspects of a case reach the court of appeals at different times to the detriment of judicial economy.  *See, e.g.*, *Cunningham v. Hamilton County, Ohio*, 527 U.S. 198, 203-04 (1999); *Morgan v. United States*, 968 F.2d 200, 203 (2d Cir. 1992).

A contempt order is not final, and thus not appealable under § 1291, "until after the sanction has been determined."  *Fugazy Express*, 982 F.2d at 775; *see also Forschner*, 124 F.3d at 410; *Dove v. Atl. Capital Corp.*, 963 F.2d 15, 17 (2d Cir. 1992); *In re Irving*, 600 F.2d 1027, 1031 n.1 (2d Cir. 1979).  In *Forschner*, this Court dismissed an appeal of a contempt order for lack of jurisdiction when the district court had ruled that the party seeking contempt would receive damages and

15

attorneys' fees, but had not determined the amount of either award.  124 F.3d at

410.[6]  Because contempt sanctions had not yet been fully formulated, the order was

not final.  *Id.*[7]

Here, the district court established some future sanctions, but also directed

HealthBridge to pay an undetermined amount of backpay to the employees for

whom it had failed to reinstate pre-implementation terms and conditions of

employment and invited adversarial motions on the amount of attorneys' fees and

costs to which the Board was entitled.  (SPA-3-4.)  Like in *Forschner*, the district

court left open for further proceedings the amounts of the damages and attorneys'

fees that HealthBridge must pay.  Moreover, the contempt order anticipates

additional actions by the parties and future involvement by the court—

HealthBridge was to produce business records necessary to determine backpay

(SPA-3) and both parties were to submit material to the court regarding fees and

[6] HealthBridge inaccurately describes the facts of *Forschner*.  (Appellant Br. 46.)
The contempt order in that case provided for both damages and attorneys' fees, not
just attorneys' fees.  *See Forschner*, 124 F.3d at 410.

[7] HealthBridge suggests the existence of an intracircuit conflict on this issue
between *Forschner* and *Dove*, but no such conflict exists.  *Dove* involved the
unique situation of a contempt order during the principal litigation for failure to
comply with a discovery order, 963 F.2d at 18, a situation not present in *Forschner*
or here.  Indeed, this Court has cited *Dove* for the general rule that a contempt
order without sanctions is non-final and thus non-appealable under § 1291.  *See
Forschner*, 124 F.3d at 410; *Wilder v. Bernstein*, 49 F.3d 69, 72 (2d Cir. 1995);
*Fugazy Express*, 982 F.2d at 775.

16

costs (SPA-4).  With sanctions left unformulated and work left for the district court to do, the order was not final.

The fact that the contempt proceedings were instituted after the conclusion of the 10(j) litigation does not render the order final and appealable—the non-appealable contempt order in *Forschner* was likewise entered after the entry of judgment in the principal action.  124 F.3d at 404.  HealthBridge's lengthy quotation from *United States v. O'Rourke*, 943 F.2d 180 (2d Cir. 1991), is similarly inapposite.  In *O'Rourke*, the district court had already set a "specific threat of future sanctions" that would automatically go into effect upon non-compliance, 943 F.2d at 186 (citation omitted); because nothing remained but execution, the order was appealable.  Here, by contrast, the barrier to finality is that not all sanctions have been formulated.

HealthBridge's suggestion that the contempt order is final even though damages have not yet been determined mistakes an exception for the rule.  The general rule is that, "where . . . the extent of damages remains undetermined, there is no final order."  *Forschner*, 124 F.3d at 410.  A decision may be appealable despite an outstanding calculation of damages only if that calculation is simply a "ministerial or arithmetic computation," *Morgan*, 968 F.2d at 204, that will be "mechanical and uncontroversial," *Synergy Gas Co. v. Sasso*, 853 F.2d 59, 62 (2d

Cir. 1988).[8]  This limited exception applies only in "a small class of cases."

*Morgan*, 968 F.2d at 204.  In such cases, "[t]he rationale is that when what remains

to be done is merely routine, that routine decision will not spark an appeal; hence

permitting the earlier review will not thwart the policy against piecemeal appeals."

*Id.*  That rationale is not applicable here.  The process of determining backpay will

involve several complicated and potentially contentious steps, including the

production of documents by HealthBridge to the Director and the identification and

computation of wage rates and the value of various benefits for approximately 700

employees.  Given its litigious track record in these proceedings, the likelihood

that HealthBridge will challenge the amount of backpay or other aspects of the

process is high, resulting in the kind of multiple, piecemeal appeals that the final-

decision rule was meant to avoid.

　　The cases that HealthBridge cites for the proposition that ongoing litigation

over attorneys' fees is not a barrier to finality did not occur in the contempt

context.  Unlike an award of attorneys' fees pursuant to statute or contract,

attorneys' fees as a contempt sanction are not ancillary to the principal

adjudication.  The imposition of fees in contempt is part of a court's inherent

---

[8] In *Morgan*, for example, this Court retained jurisdiction over the appeal of a
district court's order instructing the magistrate judge to subtract an undisputed
amount from the damages award as a set off.  968 F.2d at 201, 204-05.  The issue
on appeal was whether the set off was required by law.  *Id.* at 201.

power to ensure compliance with its orders, and is an integral component of that effort. *See Cook v. Ochsner Found. Hosp.*, 559 F.2d 270, 272 (5th Cir. 1977). Moreover, unlike in the cases that HealthBridge cites, attorneys' fees are not the only sanction left undetermined by the district court's contempt order; the court also left open the backpay determination.

Finally, the district court's contempt order is not appealable under 28 U.S.C. § 1292(a)(1) as an interlocutory order continuing or modifying an injunction. The order enforces the 10(j) injunction; it does not modify that injunction. HealthBridge's contention that the contempt order imposed a new obligation by instructing it to reinstate the pre-implementation terms and conditions of employment overlaps with its challenge to the order on the merits. For the reasons detailed below, the injunction clearly and unambiguously imposed this obligation on HealthBridge. HealthBridge was a named Respondent in the injunction proceedings, and the injunction directed "Respondents" to reinstate the pre-implementation employment terms. *See infra* Part III.A.1. Moreover, HealthBridge already had an obligation as a joint employer to maintain these terms. *See infra* Part. III.A.2. Contrary to HealthBridge's contention, the injunction required reinstatement of these specific terms, not just of the status quo ante in some general sense; moreover, HealthBridge was involved with terms of employment under the status quo. *See infra* Part III.A.3. Because the contempt

19

order's articulation of HealthBridge's obligations under the injunction was thus correct, that order did not modify the injunction for § 1292(a)(1) purposes. *See Wilder*, 49 F.3d at 72 ("[I]f the Judge correctly construed the Decree, he did not modify it . . . .").

The fact that the contempt order imposes its own backpay, posting, and service requirements does not render it appealable under § 1292(a)(1)—these obligations are part of the contempt order itself, not additions to the underlying injunction. Under HealthBridge's reasoning, any contempt order based on failure to comply with an injunction would be immediately appealable if it imposes any sanction other than an instruction to comply with the injunction. This is not the law. Indeed, *Forschner* involved the dismissal for lack of jurisdiction of an appeal of a contempt order that awarded damages and attorneys' fees for failing to comply with an injunction. 124 F.3d at 410.

Because neither § 1291 nor § 1292(a)(1) provides grounds for HealthBridge to appeal the district court's contempt order, this Court should dismiss the appeal for lack of jurisdiction.

In addition, HealthBridge's arguments regarding the impact of the bankruptcy-court's confirmation order and § 1113(c) order on the contempt order and injunction are not properly before this Court. HealthBridge has not yet filed a notice of appeal of the district court's May 30, 2014 order denying HealthBridge's

20

Rule 60(b) motion on those bases and granting the Director's motion to stay the

proceedings.  *See, e.g.*, *Ingraham v. United States*, 808 F.2d 1075, 1081 (5th Cir.

1987) ("[W]here the 60(b) motion is filed after the appeal is noticed, an appeal

from the ruling on that motion must be separately taken if the issue raised in that

motion is to be preserved for appeal.").

## III.  The District Court Did Not Abuse Its Discretion In Holding HealthBridge in Contempt

Civil contempt is "a sanction to enforce compliance with an order of the

court or to compensate for losses or damages sustained by reason of

noncompliance."  *McComb v. Jacksonville Paper Co.*, 336 U.S. 187, 191 (1949).

A party seeking contempt "must establish that (1) the order the contemnor failed to

comply with is clear and unambiguous, (2) the proof of noncompliance is clear and

convincing, and (3) the contemnor has not diligently attempted to comply in a

reasonable manner."  *King v. Allied Vision, Ltd.*, 65 F.3d 1051, 1058 (2d Cir.

1995).

The district court did not abuse its discretion in holding HealthBridge in

contempt for "fail[ing] to restore the employees' wages and benefits in violation of

the 10(j) Injunction."  (SPA-2.)  It is uncontested that the employees are not

currently working under the pre-implementation terms and conditions of

employment.  Accordingly, the second criterion for a contempt finding—"the

proof of noncompliance is clear and convincing"—has been met. *King*, 65 F.3d at 1058. The district court's conclusion that the injunction was clear and unambiguous and that HealthBridge did not diligently attempt to comply with it was not an abuse of discretion.

## A.    The Injunction Was Clear and Unambiguous

A court order is "clear and unambiguous" if the party to whom it is addressed can "'ascertain from the four corners of the order precisely what acts are forbidden.'" *King*, 65 F.3d at 1058 (quoting *Drywall Tapers, Local 1974 v. Local 530, Operative Plasterers Int'l Ass'n*, 889 F.2d 389, 395 (2d Cir. 1989)). The district court did not abuse its discretion in finding that the injunction clearly and unambiguously directs HealthBridge to reinstate the pre-implementation terms and conditions of employment.

### 1.    HealthBridge's obligation was clear from the plain text of the injunction order

HealthBridge's obligation under the injunction to reinstate the pre-implementation terms of employment is clear from the text of the court's order. The injunction order states

> Respondents shall reinstate the previous wages, benefits and other terms and conditions of employment for the employees that were in place on June 16, 2012, and rescind any or all unilateral changes implemented by Respondents

22

(JA-54).  The order defines "Respondents" to include HealthBridge.  *See* JA-51
(referring to "HealthBridge Management, LLC, together with health care facilities
it operates in Connecticut ('Respondents')").  Given the plain text, HealthBridge
could "ascertain from the four corners of the order precisely what acts" it was
required to take.  *King*, 65 F.3d at 1058 (citation omitted).

In a conference on July 23, 2013, the district judge unambiguously informed
the parties that "the injunction order applies to all respondents, HealthBridge
included."  (SPA-117.)  Indeed, the judge explained that "a plain commonsense
reading of the injunction order allows for only one reasonable conclusion, which is
that it applies to HealthBridge" and that "it does require HealthBridge to take the
specified actions."  (SPA-117, 121.)  Addressing the standard for contempt, the
judge noted that, "to the extent HealthBridge can claim that it was uncertain, I
hope that my remarks today have provided necessary clarification."  (SPA-121.)
Despite this explicit clarification, HealthBridge made no effort to comply with the
injunction in the five months between this conference and the issuance of the
contempt order.  At the very least, HealthBridge's obligations under the injunction
order were clear and unambiguous as of July 23, yet HealthBridge continued to
refuse to comply.

HealthBridge does not argue that it is not a "Respondent" subject to the
injunction, but contends—contrary to the plain text of the court's order—that not

23

all aspects of the injunction apply to all Respondents, and that the instruction to

reinstate the pre-implementation terms of employment did not clearly apply to it

because it is not an employer and has no collective-bargaining relationship with

District 1199.  (Appellant Br. 35-36.)[9]  In addition to finding no support within the

"four corners of the order," *King*, 65 F.3d at 1058 (citation omitted), these

contentions would render the injunction order self-contradictory.  Each aspect of

the injunction requires actions that an employer would take—reinstating striking

workers, restoring pre-implementation terms of employment, bargaining with the

union, and posting a remedial notice where notices to employees are customarily

posted.  Under HealthBridge's proposed reading, it would not be responsible for

*any* of these requirements.  HealthBridge's position would thus lead to the

nonsensical result that the district court issued an injunction against HealthBridge

none of which applies to HealthBridge.  This argument reads HealthBridge out of

the injunction entirely, contrary to the order's clear language, and should thus be

rejected.[10]

---

[9] As explained below, this characterization of HealthBridge's role is contrary to the record.  HealthBridge was a joint employer of the healthcare-center employees and participated in collective bargaining.  *See infra* pp. 25, 29-30.

[10] The Director's decision not to seek contempt against Wethersfield, a health-care facility managed by HealthBridge (and thus a "Respondent" under the injunction) that closed in 2012, has no bearing on the scope of the injunction.  Neither the district court nor the Director ever stated that the injunction did not apply to

### 2.    HealthBridge's status as a joint employer made clear its obligation under the injunction to reinstate terms that it already had a statutory duty to maintain

HealthBridge's responsibility under the injunction for reinstating the pre-implementation terms and conditions of employment was also clear and unambiguous given HealthBridge's status as a joint employer of the healthcare-center employees. As a joint employer, HealthBridge already had a statutory obligation to maintain those terms. Accordingly, the injunction's directive to reinstate them was not a "substantial new obligation" (Appellant Br. 35) that HealthBridge might not have expected.[11]

---

Wethersfield or that Wethersfield's failure to comply was not contumacious. The Director is not required to seek contempt against every non-compliant party; its decision not to seek contempt against a closed facility does not constitute "recogniz[ing] that the Injunction Order does not require all of the named 'Respondents' to independently carry out every single requirement of the Order" (Appellant Br. 35). It would have made no sense to seek compliance from a facility that is no longer operating. Nor does the district court have some sort of independent, free-floating obligation to hold all non-compliant parties in contempt.

[11] HealthBridge does not contest its joint-employer status in this appeal. This status is well supported by evidence in the record, *see supra* pp. 3-7, as the district court recognized, Dist Ct. Dkt. No. 143, at 6-8 & nn.2-5. In addition, the Board has found that HealthBridge and the Centers were joint employers in related unfair-labor-practice proceedings, *HealthBridge Mgmt., LLC*, 360 NLRB No. 118 (2014), as have multiple ALJs, *HealthBridge Mgmt., LLC*, 2013 WL 5913968 (NLRB Div. of Judges Nov. 1, 2013); *HealthBridge Mgmt., LLC*, 2012 WL 3144346 (NLRB Div. of Judges Aug. 1, 2012). These findings were supported by HealthBridge's stipulation to its joint-employer status (for purposes of those cases only), but also by the record in those cases, which contained evidence consistent with that stipulation.

A joint-employer relationship exists when "separate legal entities . . . handle certain aspects of their employer-employee relationships jointly." *Clinton's Ditch Coop. Co. v. NLRB*, 778 F.2d 132, 137 (2d Cir. 1985). When two entities serve as joint employers, they both have a statutory obligation to bargain in good faith with the representative of their shared employees, including a duty to refrain from imposing unilateral changes in the terms and conditions of employment without first bargaining to impasse.[12] *NLRB v. 675 West End Owners Corp.*, 304 F. App'x 911, 912-15 (2d Cir. 2008); *G. Heileman Brewing Co. v. NLRB*, 879 F.2d 1526, 1530 (7th Cir. 1989); *Whitewood Maint. Co.*, 292 NLRB 1159, 1168-69 (1989), *enforced sub nom. Texas World Serv. Co. v. NLRB*, 928 F.2d 1426 (5th Cir. 1991). The bargaining obligations of each joint employer are independent and co-extensive; one joint employer's "bargaining duty [i]s no less than that of" its fellow

---

Nor could HealthBridge challenge its joint-employer status for the first time in contempt proceedings. *United States v. Rylander*, 460 U.S. 752, 757 (1983) (If a party could have raised an issue before and did not, "the issue may not be raised for the first time in a contempt proceeding."). The district court in the 10(j) litigation considered HealthBridge's status as a joint employer to be uncontested. (SPA-114-16; *see also* Dist. Ct. Dkt. No. 143, at 8-9.) Indeed, HealthBridge's only reference to the Director's allegation of joint-employer status (JA-29) in any of its numerous filings in the 10(j) proceedings was a single sentence in its reply brief on appeal, Reply Br., *Kreisberg*, No. 12-4890, 2013 WL 1739184, at *23 (2d Cir. filed Apr. 15, 2013), and issues raised for the first time in a reply brief are deemed waived, *Conn. Bar Ass'n v. United States*, 620 F.3d 81, 91 n.13 (2d Cir. 2010).

[12] The duty to bargain in good faith is found in Section 8(d) of the NLRA. 29 U.S.C. § 158(d). Failure to do so is an unfair labor practice. *Id.* § 158(a)(5).

joint employer.  *American Air Filter Co.*, 258 NLRB 49, 53 (1981).  Because this

obligation is statutory, the prohibition on unilateral changes to terms of

employment exists regardless of whether those terms are set by contract, and

continues in effect after the expiration of a contract.  *Litton Fin. Printing Div. v.*

*NLRB*, 501 U.S. 190, 198 (1991); *NLRB v. Katz*, 369 U.S. 736, 739-41 (1962);

*Derrico v. Sheehan Emergency Hosp.*, 844 F.2d 22, 26 (2d Cir. 1988).

 As a joint employer, HealthBridge thus had a statutory obligation to

maintain the terms and conditions of employment of the employees at the Centers

that were in place on June 16, 2012.  This obligation "was no less than that of" the

Centers, *American Air Filter*, 258 NLRB at 53, and existed independently of any

contract.  Given this pre-existing responsibility, the injunction's order to reinstate

those same terms clearly applied to HealthBridge.  HealthBridge had an obligation

to reinstate the terms that it had an obligation not to change in the first place.

 The dicta that HealthBridge cites (Appellant Br. 36-37) from *AT&T v.*

*NLRB*, 67 F.3d 446, 451 (2d Cir. 1995), does not limit the scope of its bargaining

obligation as a joint employer.  In *AT&T*, this Court observed that a company's

failure to bargain over the termination of a contract between its alleged joint

employer and a third party would not have violated the NLRA even if the company

was a joint employer because the termination decision was made by the third party;

neither joint employer played any role in the decision.  *Id.*  *AT&T* thus says nothing

about the scope of a joint employer's bargaining obligation regarding decisions made by it or its fellow joint employer that affect the terms of employment of their shared employees.  Unlike in *AT&T*, HealthBridge was directly involved with decisions that were subject to bargaining; it crafted and implemented terms of employment and made bargaining proposals such as the terms that were unilaterally implemented on June 17, 2012.  (JA-320-21; JA-360; JA-25, 34, 53; SA-2-5).  Accordingly, an injunction addressing the failure to bargain over those decisions clearly applied to it.

Finally, HealthBridge's argument (Appellant Br. 37) about derivative liability misconstrues both the nature of the joint-employer doctrine and the facts of this case.  Each joint employer is directly liable for failing to bargain in good faith, because joint-employer status creates an independent, co-extensive bargaining obligation on the part of both entities.  *G. Heileman Brewing*, 879 F.2d at 1530; *Whitewood Maint.*, 292 NLRB at 1168-69; *American Air Filter*, 258 NLRB at 53.  The two cases that HealthBridge cites did not involve bargaining; instead, the issue was whether one entity could be held liable for another entity's actions in discharging an employee, *Viking Indus. Sec., Inc. v. NLRB*, 225 F.3d 131, 132 (2d Cir. 2000), or closing a plant, *Darlington Mfg. Co. v. NLRB*, 325 F.2d 682, 683 (4th Cir. 1963), *vacated by Textile Workers Union of America v. Darlington Mfg. Co.*, 380 U.S. 263 (1965).  In both cases the asserted related entity

28

was alleged to be a single employer with the entity that engaged in the unlawful

conduct for which the Board sought to impose liability—the termination in *Viking*

*Industrial Security*, 225 F.3d at 132, and the plant closure in *Darlington*, 325 F.2d

at 684, 687—but in neither case did the related entity participate in that conduct.

By contrast, as shown below, HealthBridge was directly involved with the

bargaining violations in this case.

For the same reasons, HealthBridge's argument that it cannot be held in

contempt if the Centers are not also held in contempt (Appellant Br. 37) is simply

incorrect.  HealthBridge is being held in contempt for its *own* misconduct in failing

to comply with its *own* obligation under the injunction.  The district court did not

hold HealthBridge in contempt derivatively; HealthBridge's liability is not

derivative of the Centers' because it is not premised on any conduct by the Centers.

Because the Centers' failure to comply with the injunction is not the basis for the

contempt order against HealthBridge, whether the Centers' conduct was

contumacious is irrelevant.

### 3. HealthBridge's arguments regarding the status quo are contrary to the record and irrelevant

HealthBridge's argument that its obligation to reinstate pre-implementation

terms and conditions of employment was unclear because the injunction simply

restored a status quo ante under which it had no responsibility for terms of

employment (Appellant Br. 34) is contrary to the record and misconstrues the injunction.

Contrary to HealthBridge's assertion, the record shows that HealthBridge *was* involved with bargaining and co-determined the employees' terms and conditions of employment under the status quo ante. HealthBridge developed a system-wide labor-relations strategy and published an HR manual that set forth employment terms. (JA-319-21; JA-360.) The manual dealt with many of the same aspects of employment as the proposals that were unilaterally implemented on June 17, 2012. (JA-452 (meal break); JA-489 (payroll); JA-491 (overtime); JA-511-12 (401(k) plan); JA-501-04 (health insurance); JA-531-34 (sick leave); JA-543-44 (training/tuition funds).) HealthBridge officials served on the bargaining committee in contract negotiations with District 1199 (SA-2-5), and signed agreements with the union (SA-8-10). Moreover, the Director alleged in his 10(j) petition that HealthBridge and the Centers were both responsible for implementing the unilateral changes in working conditions (JA-25, 34), and both the district court and this Court held that reasonable cause existed to believe that the unfair labor practices occurred "as alleged in the petition" (JA-53); *see also Kreisberg*, 732 F.3d at 142.

HealthBridge's insistence that it was not a "guarantor" of the Centers' obligations under the status quo ante is beside the point. The injunction orders

30

HealthBridge to reinstate the pre-implementation terms of employment, not to guarantee that the Centers do so. HealthBridge is independently responsible under the injunction for reinstating those terms of employment, just as it was directly involved with terms of employment under the status quo ante. And again, the contempt order is based on HealthBridge's own failure to perform this obligation, not its failure to act as a guarantor of the Centers' performance.

Moreover, HealthBridge's assertion that the injunction "directed a return to 'the status quo'" (Appellant Br. 34 (quoting JA-53)) in some general sense is premised on a misreading of the injunction. The district court held that an injunction was necessary "because there is a pressing need to restore the status quo" (JA-53), but the injunction order itself provides a more specific directive: "reinstate the previous wages, benefits and other terms and conditions of employment for the employees that were in place on June 16, 2012" (JA-54). This order is an objective, verifiable obligation going forward, not just a vague instruction for a wholesale restoration of the status quo as HealthBridge would interpret it.

### 4. HealthBridge cannot use the contempt proceedings to challenge the underlying injunction

Much of HealthBridge's challenge to the contempt order is essentially a belated argument that the injunction's directive to reinstate pre-implementation

terms and conditions of employment *should* not apply to it.  But HealthBridge cannot use contempt proceedings as a forum for collaterally attacking the injunction itself.  A party's belief that a court order is incorrect is not grounds for disobeying the order, and thus is not a defense to contempt.  *See Maggio v. Zeitz*, 333 U.S. 56, 69 (1948) ("[W]hen it has become final, disobedience cannot be justified by re-trying the issues as to whether the order should have issued in the first place."); *N.A. Sales Co. v. Chapman Indus. Corp.*, 736 F.2d 854, 857 (2d Cir. 1984) (A party "cannot now excuse its failure to comply with the order by claiming the order is not legally warranted.").

Instead, HealthBridge's recourse was to raise this type of challenge in its appeal of the injunction.  HealthBridge appealed the injunction to this Court but did not argue that, because it was not a joint employer or had no bargaining obligations under the status quo, the district court erred in directing it to reinstate the employees' pre-implementation terms and conditions.  *See* Appellant Br., *Kreisberg*, No. 12-4890, 2013 WL 1193197, at *46-57 (2d Cir. filed Mar. 15, 2013).[13]  Similarly, HealthBridge could have asked the district court for clarification if it was uncertain whether it was responsible for complying with this

---

[13] As noted above, HealthBridge adverted to the issue of whether the injunction should apply to it in a single paragraph in its reply brief, Reply Br., *Kreisberg*, No. 14-4890, 2013 WL 1739184, at *22-23 (2d Cir. filed Apr. 15, 2013), but issues raised for the first time in a reply brief are deemed waived, *Conn. Bar Ass'n*, 620 F.3d at 91 n.13.

aspect of the injunction.  *See McComb*, 336 U.S. at 192 (explaining that parties who "undert[ake] to make their own determination of what the decree meant . . . act[] at their peril"); *TiVo Inc. v. EchoStar Corp.*, 646 F.3d 869, 886 (Fed. Cir. 2011) (citing cases); *Nat'l Basketball Ass'n v. Design Mgmt. Consultants, Inc.*, 289 F. Supp. 2d 373, 377 (S.D.N.Y. 2003).  Indeed, the district court faulted HealthBridge for failing to do just that, explaining that "at a minimum HealthBridge was obliged to return to this Court and seek clarification or perhaps modification of the injunction rather than simply arrogate to itself the decision to fail to comply."  (SPA-17-18; *see also* Dist. Ct. Dkt. No. 143, at 10-11.)

HealthBridge's position is reminiscent of the argument that this Court rejected in *Powell v. Ward*, 643 F.2d 924, 932 (2d Cir. 1981).  The defendant in *Powell* failed to adopt certain procedures in its Adjustment Committees that were required by an injunction for any proceeding that could result in solitary confinement, but challenged the subsequent contempt order on the grounds that Adjustment Committees did not order such punishments.  Upholding the order, this Court held that "[i]f . . . Adjustment Committees do not have the power to order solitary confinement or the like (so that the 1975 Order perhaps *should* not have applied to Adjustment Committees), [defendants'] appropriate remedies were to appeal this portion of the 1975 Order . . . or to seek modification of the Order in the district court."  *Id.*  Like the *Powell* defendant, HealthBridge failed to pursue

33

either avenue.  It cannot now challenge the validity of the 10(j) injunction to justify its non-compliance with a clear and unambiguous order.

**B.      HealthBridge Has Not Even Attempted To Reinstate the Pre-Implementation Terms and Conditions of Employment**

A party is subject to contempt when it "has not been reasonably diligent and energetic in attempting to accomplish what was ordered."  *Powell*, 643 F.2d at 931 (internal quotation marks omitted); *see also Aspira of New York, Inc. v. Bd. of Educ. of the City of New York*, 423 F. Supp. 647, 654 (S.D.N.Y. 1976) (holding in contempt a party that "displayed an evident sense of nonurgency bordering on indifference").  Perforce, contempt is appropriate when "no attempt — much less a diligent one — at compliance has been shown."  *New York State Nat'l Org. for Women v. Terry*, 886 F.2d 1339, 1352 (2d Cir. 1989).  By contrast, a party can avoid contempt on the grounds that it diligently attempted to comply when it has made documented progress towards compliance with a court order, even if it has not yet achieved strict compliance.  *Dunn v. New York State Dep't of Labor*, 47 F.3d 485, 487, 490 (2d Cir. 1995).  Nor is a contempt finding appropriate for an isolated instance of non-compliance that "inadvertently slipped through the cracks" despite "detailed, time-consuming and costly attempts to comply with the court orders."  *O'Hearn v. Bodyonics, Ltd.*, 56 F. Supp. 2d 302, 312 (E.D.N.Y. 1999).

34

HealthBridge contends that it was reasonably diligent in complying with the injunction (Appellant Br. 38-39), but it is uncontested that HealthBridge made *no* effort to comply with the order to reinstate the pre-implementation terms and conditions of employment.  As in *Terry*, "no attempt — much less a diligent one — at compliance has been shown."  886 F.2d at 1352.  HealthBridge's consistent and ongoing refusal to reinstate the pre-implementation terms of employment was not an isolated instance of non-compliance.  *Cf. O'Hearn*, 56 F. Supp. 2d at 312.  Nor had HealthBridge made even incremental progress at the time of the contempt order—it had simply taken no steps towards reinstating these terms.  After nearly a year of total non-compliance, its actions reflected a "sense of nonurgency bordering on indifference," which "fall[s] far short of the requisite diligence."  *Aspira of New York*, 423 F. Supp. at 654.  Although HealthBridge suggests that it was reasonably diligent because it complied with other aspects of the injunction (Appellant Br. 38), compliance with part of an injunction is insufficient to avoid contempt when another part is wholly ignored.

Even if HealthBridge's assertion that the Centers reinstated the pre-implementation terms of employment when the striking workers returned on March 3 were true, HealthBridge admits that those terms were promptly revoked again the following day.  (Appellant Br. 38-39.)  Any such reinstatement of terms was thus completely illusory.  Employees would not have seen the effects of the

35

supposedly reinstated terms in the one day that HealthBridge claims that they were in place.  Employees would not have accrued sick leave at the previous rate, received pension contributions, or been paid on a weekly basis in that brief period, for example.  Further, reinstatement of the pre-implementation terms for a single day would not serve to protect or advance the bargaining process, which was one major purpose of the injunction.

The remainder of HealthBridge's arguments as to its supposed diligence go to the clarity of its obligation under the injunction and to the impact of subsequent bankruptcy-court rulings on that obligation, not to HealthBridge's diligence in compliance.  The effect of the bankruptcy-court rulings is discussed below.  And because, as explained above, HealthBridge's obligation to reinstate the pre-implementation terms of employment was clear and unambiguous, it was not reasonably diligent in complying with the injunction when it failed to comply with this obligation.[14]

---

[14] HealthBridge can hardly rely on the quoted comments from the district judge, made in conference calls several months before issuing the contempt order, as evidence that its obligation under the injunction was unclear (Appellant Br. 40-41).  The judge's comments were an acknowledgment of HealthBridge's argument, not a finding on the clarity of HealthBridge's obligation.  Indeed, in the same July 23 conference, the judge chided HealthBridge for not seeking clarification from the district court as to the possible effect of the bankruptcy-court rulings but instead "tak[ing] it upon itself to basically relieve itself of an obligation under the injunction even though by its terms the injunction applies to Healthbridge."  (SPA-118-19.)  The judge concluded the conference by instructing that "HealthBridge

**IV.    The Bankruptcy-Court Rulings In the Centers' Bankruptcy Proceedings Do Not Require Reversal of the Contempt Order**

HealthBridge's contentions that the various rulings in the Centers' bankruptcy proceedings necessitate reversal of the contempt order (Appellant Br. 27-29; 31-32) are either inaccurate or premature.  The bankruptcy court's orders under 11 U.S.C. § 1113 did not affect HealthBridge's own obligations under the injunction.  As the district court found in denying HealthBridge's Rule 60(b) motion, even if HealthBridge had doubts about its obligations under the injunction in light of the bankruptcy court's grant of interim relief, its failure to comply with the injunction without first seeking clarification from the district court was sufficiently wrongful to warrant a finding of contempt.  (Dist. Ct. Dkt. No. 143, at 10-11.)  Moreover, any consideration of the effect of the bankruptcy court's confirmation order on the continuing viability of the contempt order and injunction should await the outcome of the Board's pending appeal of the confirmation order.

**A.    The § 1113(e) and (c) Orders Did Not Affect HealthBridge's Obligations Under the Injunction**

HealthBridge contends that the bankruptcy court's authorization of interim, and later permanent, relief to the Centers under 11 U.S.C. § 1113 relieved it of its

should recognize its responsibility as a joint employer; to take the actions required by the injunction order" and stating that, "to the extent HealthBridge can claim that it was uncertain, I hope that my remarks today have provided necessary clarification."  (SPA-121.)

obligation under the injunction to restore the pre-implementation terms and conditions of employment (Appellant Br. 27-29, 31-33).  Yet, this contention ignores the critical fact that HealthBridge was not a debtor in the bankruptcy proceedings.  Moreover, its obligation to restore terms and conditions of employment does not stem from the expired CBAs.

Initially, because HealthBridge was not a debtor in the bankruptcy case, it did not request relief for itself under 11 U.S.C. § 1113.  Accordingly, the bankruptcy court's § 1113 orders are simply inapplicable to it.  Only a "debtor in possession" or a "trustee" may reject a CBA under § 1113—HealthBridge is neither.  11 U.S.C. § 1113(a).  In addition, a CBA can be rejected under § 1113 "only in accordance with the provisions of this section."  *Id.*  That HealthBridge has made no attempt to meet the stringent requirements set forth in those provisions (nor file for bankruptcy for that matter) renders it unable to take advantage of the relief that the statute offers.

Nor is HealthBridge vicariously relieved of its obligations under the injunction by virtue of the relief granted to the Centers.  Whatever effect the § 1113 orders had on the Centers' bargaining obligation under the NLRA or the injunction, it does not extend to a non-debtor like HealthBridge.  The question of whether a jointly responsible (non-debtor) employer is entitled to any benefit when its co-employer has obtained bankruptcy protection has already been answered in

38

the negative in this Circuit and others, in cases applying other bankruptcy provisions, such as the automatic stay and discharge. *See, e.g.*, *NLRB v. E.D.P. Med. Computer Sys., Inc.*, 6 F.3d 951, 957 (2d Cir. 1993) (even if the automatic stay were applicable, an alter ego that has not filed for bankruptcy does not get the benefit of the stay); *In re Goodman*, 873 F.2d 598, 602 (2d Cir. 1989) (responding to sole shareholder's contention that his discharge should shield non-debtor corporation from NLRA liability of bankrupt alter ego corporations, court "agree[d] with the District Court that [the new company] cannot be shielded from liability as a successor to [the bankrupt companies] because [the new company] itself has never obtained a discharge in bankruptcy"); *NLRB v. Edward Cooper Painting, Inc.*, 804 F.2d 934, 936, 943-44 (6th Cir. 1986) (bankruptcy relief granted to individual partner and to alter-ego corporation did not shield partnership from NLRA liability); *Martin Bush Iron & Metal*, 329 NLRB 124, 125 (1999) (company that is not party to bankruptcy proceedings "is therefore not entitled to the protection of Section 365 or any other provision of the Bankruptcy Code" granted to its related entity in those proceedings). Thus, case law refutes HealthBridge's primary argument that as a non-debtor, it can simply borrow the Centers' bankruptcy protection for itself.

Second, even assuming arguendo that relief under § 1113 can "abrogate" (Appellant Br. 31) CBAs so as to void them entirely, HealthBridge still has a non-

39

contractual, independent obligation under both the injunction and the NLRA to reinstate the pre-implementation terms and conditions of employment.[15]  Contrary to HealthBridge's characterization of the 10(j) injunction (Appellant Br. 8, 32-33), it did not order HealthBridge to restore the expired CBAs, but instead to reinstate the pre-implementation terms of employment.  (JA-54 ("Respondents shall reinstate the previous wages, benefits and other terms and conditions of employment for the employees that were in place on June 16, 2012, and rescind any or all unilateral changes implemented by Respondents")).  The fact that those terms were originally set by contract does not change the nature of the injunction's explicit directive.

In addition, "abrogation" of the expired CBAs could not relieve HealthBridge of its statutory obligations to bargain in good faith and to refrain from unilaterally imposing new terms and conditions of employment.  These statutory requirements exist regardless of any contract and thus outlive the contract itself.  *Litton Fin. Printing Div.*, 501 U.S. at 198.  HealthBridge's statutory and

---

[15] The Board disputes that § 1113 applies at all to the statutory (i.e., non-contractual) obligation to maintain the terms of an expired labor agreement, and contends that the bankruptcy court erred in granting § 1113 relief to the Centers on this basis.  *See, e.g.*, *In re Sullivan Motor Delivery, Inc.*, 56 B.R. 28, 29-30 (Bankr. E.D. Wis. 1985).  *But see In re Karykeion, Inc.*, 435 B.R. 663, 673-76 (Bankr. C.D. Cal. 2010).  The Board's appeal of the § 1113 orders on this issue is pending.

injunctive obligations thus remain extant, as does its liability for failing to comply with them.[16]

HealthBridge's argument that the § 1113 orders necessitate reversal of the contempt order relies heavily on *Northwest Airlines Corp. v. Association of Flight Attendants*, 483 F.3d 160 (2d Cir. 2007), a case distinguishable on both facts and law.  Critically, unlike HealthBridge, the employer in *Northwest Airlines* had filed for bankruptcy and sought relief under § 1113.  *Id.* at 164-65.  Thus, the case dealt only with the impact of a § 1113 order on a *debtor's* obligations.  It therefore does not support the position that the bankruptcy protections provided to the Centers also extend to non-debtor HealthBridge.

Moreover, unlike the NLRA-governed bargaining relationship between HealthBridge, the Centers, and District 1199, *Northwest Airlines* examined the interplay between § 1113 and the Railway Labor Act (RLA).  *Id.* at 165-66.  The RLA is a distinct statutory scheme from the NLRA and, as this Court noted in *Northwest Airlines* itself, "the Supreme Court has instructed that we be circumspect in analogizing the RLA to the NLRA."  *Id.* at 176 n.10; *see also id.* at 172 (noting that the Court's interpretation of § 1113 was made "[u]nder the

---

[16] Moreover, were the Court to accept HealthBridge's argument that § 1113 can "abrogate" CBAs so as to void them entirely, such a result could cause serious disruption to multiemployer collective bargaining relationships.  That is, one bankrupt employer's rejection of a CBA arguably would "abrogate" the entire multiemployer contract.

41

circumstances of this case").  In particular, in *Northwest Airlines*, this Court primarily held that § 1113 contract rejection relieved the parties of their obligation to maintain existing terms and conditions of employment.  *See id.* at 173.  And under the RLA, this obligation applies only when there is an *existing* contract.  *Id.* By contrast, the NLRA imposes an independent statutory obligation to maintain terms and conditions of employment that does not depend upon the existence of a contract.  *Litton Fin. Printing Div.*, 501 U.S. at 198.  Therefore, abrogation of a contract subject to the NLRA does not automatically obviate *all* bargaining or status quo obligations.[17]

Finally, HealthBridge ascribes unwarranted significance (Appellant Br. 32) to this Court's comment in its decision affirming the 10(j) injunction that the bankruptcy court had "authorized and extended modifications to the CBA pursuant to 11 U.S.C. § 1113(e)," *Kreisberg*, 732 F.3d at 143.  HealthBridge asserts that this

---

[17] HealthBridge points to dicta in *Northwest Airlines* suggesting that the holding would apply in the NLRA context to relieve a union of a contractual no-strike clause if the employer procures a § 1113 order.  (Appellant Br. 32 n.5.)  At best, this hypothetical addresses the impact of a § 1113 order on an extant contractual obligation—the no-strike clause—which does not survive contract expiration in any event, not the statutory bargaining obligation under the NLRA or the obligation to comply with an injunction, which do survive expiration.  *See Litton Fin. Printing Div.*, 501 U.S. at 199 (identifying no-strike clauses as among a narrow set of terms and conditions of employment that do not survive expiration of an agreement).

Court sanctioned the bankruptcy court to make interim modifications to terms and conditions of employment that must be maintained following the expiration of a contract pursuant to an employer's statutory bargaining obligation under the NLRA. But the issue of whether § 1113 applies to expired contracts was not before this Court on the appeal of the injunction. It was neither briefed nor argued there. Accordingly, this Court's comment cannot properly be read as a ruling on the validity of the bankruptcy court's § 1113(e) orders. *See Hagans v. Lavine,* 415 U.S. 528, 533 n.5 (1974) (explaining that language in prior opinions is not binding where the relevant issue had not been "squarely raised" as a contention in the underlying petitions or briefs); *see also Alexander v. Sandoval,* 532 U.S. 275, 282-84 (2001) ("[T]his Court is bound by holdings, not language."). Rather, this comment was simply a factual observation of what had already transpired in the bankruptcy proceedings, not an indication of approval. Accordingly, this Court could not "recognize[]" (Appellant Br. 32) any "abrogation" of the Centers' statutory and injunctive obligations, let alone a purported abrogation that relieves HealthBridge of its independent obligation under the injunction and the NLRA to reinstate the pre-implementation terms of employment. For all of these reasons, the bankruptcy court's § 1113(e) and (c) orders as to the Centers are irrelevant to the validity of the contempt order against HealthBridge.[18]

---

[18] Furthermore, as the district court concluded, even if the bankruptcy court's grant

**B.    This Court Should Decline to Pass in the First Instance on the Impact of the Confirmation Order Because its Lawfulness Is Now on Appeal to Another Court; Instead, this Portion of the Instant Appeal Should Be Remanded to the District Court Pending Resolution of the Bankruptcy Appeal**

For the reasons detailed above, the contempt order was entirely proper when entered and should be affirmed.  Nonetheless, HealthBridge asks this Court to set aside and vacate the contempt order on the basis of the bankruptcy court's post-contempt confirmation order that is presently on appeal to another court in a different circuit.  This request should be rejected.

After the district court issued (but immediately stayed) the contempt order, and after HealthBridge noticed this appeal, the bankruptcy court, on March 6, 2014, issued the confirmation order.  This order approves sweeping, non-consensual releases of liability for the Centers' non-bankrupt affiliates, including HealthBridge.  The Board vigorously objected to the relief granted by this order, and maintains that the bankruptcy court lacked subject-matter jurisdiction and statutory power to grant non-consensual third-party releases that purport to oust the Board of its exclusive jurisdiction to remedy unfair labor practices.  *See* 29 U.S.C. § 160(a) (empowering the Board "to prevent any person from engaging in any

---

of interim relief could be viewed as providing HealthBridge with a basis for seeking modification of the injunction, HealthBridge nevertheless breached its duty of due diligence by failing to clarify its obligations under the injunction before deciding unilaterally not to comply.  (Dist. Ct. Dkt. No. 143, at 5-6; 10-11.)

44

unfair labor practice" without regard to "any other means of adjustment or prevention that has been or may be established by agreement, law, or otherwise"); *Bd. of Governors of the Fed. Reserve Sys. v. MCorp Fin., Inc.*, 502 U.S. 32, 40-41 (1991) (finding that bankruptcy courts lack jurisdiction to enjoin or limit regulatory actions within the exclusive subject-matter jurisdiction of a federal agency).  The confirmation order, together with the § 1113 orders and another order that is not at issue here, are now consolidated on appeal before the district court in New Jersey.[19] Significantly, HealthBridge and its co-affiliates recently moved to intervene in that appeal.

But rather than await the outcome of the bankruptcy appeal, HealthBridge demanded, pursuant to Federal Rule of Civil Procedure 60(b), that the Connecticut district court immediately give preclusive effect to the bankruptcy rulings and set aside the stayed contempt order.  The district court has seen through HealthBridge's premature attempts to short circuit the contempt proceedings and appropriately denied its Rule 60(b) motion.  Instead, the court agreed with the Director that the prudent course of action would be to hold further contempt

---

[19] As noted above, given the significant legal questions implicated by these orders and the public importance of the case, the Board and District 1199 have moved under 28 U.S.C. § 158(d)(2)(B)(i) to certify the case for direct appeal to the Court of Appeals for the Third Circuit.  *NLRB v. 710 Long Ridge Road Operating Co. II, LLC*, No. 14-1725, Dkt. Nos. 32-34 (D.N.J. filed May 22, 2014).  That motion is pending decision.

proceedings in abeyance pending the outcome of the bankruptcy appeals.  (Dist. Ct. Dkt. No. 143, at 11-12).  In denying HealthBridge's request, the court recognized that the confirmation order's grant of a non-consensual global release to HealthBridge could have an impact on that court's continuing ability to enforce the contempt order and injunction.  (Dist. Ct. Dkt. No. 143, at 11).  Instead of giving preclusive effect to the bankruptcy rulings which are on appeal, the court properly determined that "a stay of further proceedings . . . is sensible and appropriate."  (Dist. Ct. Dkt. No. 143, at 11).

Like the district court, this Court should refuse to set aside the contempt order.  Instead, this Court should remand the issue of the confirmation order's impact to the district court, with instructions to hold it in abeyance pending the outcome of the Board's appeal of the confirmation order.  Abeyance is appropriate whenever a party seeks to give preclusive effect to a second court's judgment that is on appeal.  It avoids "the grotesque result of perpetuating a judgment that rests on nothing more than a subsequently reversed judgment."  18A Charles A. Wright, Arthur R. Miller & Edward H. Cooper, Federal Practice and Procedure § 4433 (2d ed. 2002).  Indeed, abeyance is particularly warranted here because HealthBridge suffers little harm from a contempt adjudication that is presently stayed.[20]

---

[20] The district court also clarified in its denial of HealthBridge's Rule 60(b) motion that if the bankruptcy court's ruling is reversed, HealthBridge would not be

46

This Court's decision in *Maldonado v. Flynn*, 671 F.2d 729 (2d Cir. 1982) (per curiam), is instructive on this point.  While that case was on appeal to this Court from a grant of summary judgment by Judge Weinfeld, another lawsuit "involving some of the same claims . . . was settled and dismissed with prejudice by the district court for the Southern District of Texas."  *Id.* at 731.  Using the Texas settlement as ammunition, Flynn and his co-defendants asked this Court to bar the suit "in its entirety under principles of res judicata."  *Id.*  But because "Judge Weinfeld has never had an opportunity to address the issue of res judicata" and because "the settlement of the Texas action has since been appealed to the Fifth Circuit," this Court declined Flynn's request.  *Id.*  Instead, the Court remanded the case "to allow Judge Weinfeld to determine in the first instance, *after the Fifth Circuit has rendered its decision*, what effect the Texas settlement has on this action."  *Id.* (emphasis added).

This Court should follow *Maldonado*'s lead.  For the reasons set forth above, this Court should find, like the district court, that the contempt order was proper when it issued and that the post-contempt bankruptcy rulings do not provide a basis for setting aside the initial contempt findings.  With respect to the challenged confirmation order's effect on the district court's continuing ability to

---

responsible for any of the compensatory damages that accrue between the issuance of the bankruptcy court's confirmation order and the date of reversal of that order. (Dist. Ct. Dkt. No. 143, at 12.)

enforce the contempt order and 10(j) injunction, this Court should not, and need not, delve into this matter in the first instance. Instead, abeyance is the appropriate response, as this is precisely the kind of situation—with a pending, collateral appeal on a determinative issue—that calls for pressing the pause button, not the delete key. Therefore, as in *Maldonado*, this Court should remand this issue to the district court with instructions to await the outcome of the pending out-of-circuit appeal.[21]

## **CONCLUSION**

The Director respectfully requests that this Court dismiss HealthBridge's appeal for lack of appellate jurisdiction. If this Court reaches the merits, the Director requests that it affirm the district court's order holding HealthBridge in contempt for failing to comply with the 10(j) injunction.

Respectfully submitted,

s/ Joel A. Heller
Kevin P. Flanagan
Marissa A. Wagner
Laura T. Vazquez
  *Deputy Assistant General Counsel*

---

[21] HealthBridge similarly argues that the post-contempt § 1113(c) order provides a basis for setting aside the contempt order. As explained above, the § 1113(c) order is irrelevant to HealthBridge's contempt liability. *See supra* pp. 37-43. But if this Court disagrees as to that lack of impact, it should treat the issue the same way as the confirmation order—remand it to the district court pending the outcome of the Board's bankruptcy appeal.

Elinor L. Merberg
*Assistant General Counsel*

Counsel for Petitioner-Appellee
National Labor Relations Board
1099 14th Street NW
June 5, 2014                    Washington, DC 20570-1000

## CERTIFICATE OF COMPLIANCE WITH TYPE-VOLUME LIMITATION, TYPEFACE REQUIREMENTS, AND TYPE STYLE REQUIREMENTS

    1.     This brief complies with the type-volume limitation set forth in Fed. R. App. P. 32(a)(7)(B) because this brief contains 11,597 words, excluding the parts of the brief exempted by Fed. R. App. P. 32(a)(7)(B)(iii).

    2.     This brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type style requirements of Fed. R. App. P. 32(a)(6) because this brief has been prepared using Microsoft Office Word 2007 in proportionally spaced, 14-point Times New Roman.

s/Joel A. Heller

Washington, D.C.
June 5, 2014

## CERTIFICATE OF SERVICE

I hereby certify that on June 5, 2014, I electronically filed the foregoing with the Clerk of the Court for the United States Court of Appeals for the Second Circuit by using the CM/ECF system. All participants in the case are registered CM/ECF users and will be served by the appellate CM/ECF system.

Respectfully submitted,

s/ Joel A. Heller

Washington, D.C.
June 5, 2014