13-4850-cv
*Kreisberg v. Healthbridge Mgmt. et al.*

UNITED STATES COURT OF APPEALS
FOR THE SECOND CIRCUIT

# SUMMARY ORDER

**Rulings by summary order do not have precedential effect. Citation to a summary order filed on or after January 1, 2007, is permitted and is governed by Federal Rule of Appellate Procedure 32.1 and this court's Local Rule 32.1.1. When citing a summary order in a document filed with this court, a party must cite either the Federal Appendix or an electronic database (with the notation "summary order"). A party citing a summary order must serve a copy of it on any party not represented by counsel.**

At a stated term of the United States Court of Appeals for the Second Circuit, held at the Thurgood Marshall United States Courthouse, 40 Foley Square, in the City of New York, on the 5th day of August, two thousand fourteen.

PRESENT:

> JOSÉ A. CABRANES,
> SUSAN L. CARNEY,
> CHRISTOPHER F. DRONEY,
> > *Circuit Judges*.

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -x

JONATHAN B. KREISBERG, Regional Director of Region 34
of the National Labor Relations Board, for and on behalf of
THE NATIONAL LABOR RELATIONS BOARD,

> *Petitioner-Appellee,*

> -v.-                                                                                    No. 13-4850-cv

HEALTHBRIDGE MANAGEMENT, LLC,

> *Respondent-Appellant.*

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -x

**FOR PETITIONER-APPELLEE:**     JOEL A. HELLER (Kevin P. Flanagan, Marissa A. Wagner, Attorneys, Richard F. Griffin, Jr., General Counsel, Jennifer Abruzzo, Deputy General Counsel, Barry J. Kearney, Associate General Counsel, Jayme L. Sophir, Deputy Associate General Counsel, Elinor L. Merberg, Assistant General Counsel, Laura T.

1

|  |  |
|---|---|
|  | Vazquez, Deputy Assistant General Counsel, *on the brief*), Attorney, National Labor Relations Board, Washington, DC. |
| **FOR RESPONDENT-APPELLANT:** | ROSEMARY ALITO (Paul D. Clement, Erin E. Murphy, Bancroft PLLC, Washington, DC, George Peter Barbatsuly, *on the brief*), K&L Gates, LLP, Newark, NJ. |

Appeal from the December 23, 2013 judgment of the United States District Court for the District of Connecticut (Robert N. Chatigny, *Judge*).

**UPON DUE CONSIDERATION, IT IS HEREBY ORDERED, ADJUDGED, AND DECREED** that the appeal from the December 23, 2013 judgment of the District Court be **DISMISSED**.

Appellant HealthBridge Management, LLC ("HealthBridge") appeals from an order of the District Court holding it in civil contempt (the "Contempt Order") based on the Court's finding that HealthBridge violated a clear and unambiguous preliminary injunction (the "Injunction"). We assume familiarity with the factual and procedural history of the case and the issues on appeal, and repeat only those details necessary to our resolution of this appeal.

## BACKGROUND

HealthBridge is a manager of five long-term healthcare centers in Connecticut (the "Centers"), employees of which are represented by New England Health Care Employees Union, District 1199 (the "Union"). HealthBridge is required to manage the Centers in accordance with the terms of the governing collective bargaining agreements ("CBAs") between the Centers and the Union, but is not party to the CBAs.

In 2010, the Union filed an unfair-labor-practice charge with the National Labor Relations Board (the "Board") alleging that HealthBridge and the Centers unilaterally instituted changes to the terms and conditions of some Union members' employment. *See Kreisberg v. HealthBridge Mgmt., LLC,* 732 F.3d 131, 134 (2d Cir. 2013) ("*Kreisberg I*"). The Board concluded that this violated the National Labor Relations Act ("NLRA") and, in March 2011 brought a complaint on behalf of the Union.

In January 2011, while this dispute was ongoing, the Union and the Centers began to negotiate a new CBA. On June 16, 2012, after contentious negotiations that included a lockout and an additional complaint filed by the Board, the Centers declared that the parties were at an impasse and that the "last, best, and final" proposal of the Centers would be unilaterally implemented.

2

On August 1, 2012, an Administrative Law Judge ("ALJ") concluded that the actions of HealthBridge and the Centers violated the NLRA. *See HealthBridge Mgmt., LLC*, No. 34-CA-12715, 2012 WL 3144346 (NLRB Div. of Judges Aug. 1, 2012). On August 16, 2012 the Board's Regional Director, Jonathan B. Kreisberg, brought an action for "temporary [injunctive] relief" on behalf of the Board, pursuant to NLRA § 10(j), 29 U.S.C. § 160(j).[1] In December 2012, the District Court held that the Board had validly delegated its authority to initiate the § 10(j) petition, and granted the requested § 10(j) relief.

In relevant part, the Injunction ordered "restor[ation to] the status quo as it existed prior to the alleged unfair labor practices by requiring the respondents to reinstate Union employees to their employment at [the Centers] with the same wages and benefits that were in effect on June 16, 2012." SPA 2. The Injunction was to remain in place pending the outcome of administrative proceedings before the Board. *See Kreisberg v. HealthBridge Mgmt., LLC*, No. 12 Civ. 1299 (RNC), 2012 WL 6553103 (D. Conn. Dec. 14, 2012). HealthBridge's request for a stay of the Injunction was denied by the District Court, this Court, and the Supreme Court. On October 15, 2013, this Court affirmed the judgment of the District Court that the § 10(j) action had been properly authorized pursuant to a delegation of authority by the Board, and that injunctive relief was appropriate in the circumstances presented. *See Kreisberg I*, 732 F.3d at 142-43.

Shortly after the District Court entered the Injunction, on February 24, 2013, the Centers moved in the United States Bankruptcy Court for the District of New Jersey for Chapter 11 bankruptcy relief from certain terms and conditions of employment that were in effect on June 16, 2012. In short, the Centers requested permission to reinstate the changes they had unilaterally implemented on June 17, 2012, and which the Injunction ordered rescinded. One day after the employees were reinstated, the Bankruptcy Court granted the requested relief under 11 U.S.C. § 1113(e)[2] and extended that relief in several subsequent orders.

On May 30, 2013, the Board petitioned the District Court to hold HealthBridge, which was not party to the bankruptcy proceedings in New Jersey, in contempt for failing to comply with the Injunction.[3] Specifically, although the striking employees had been reinstated, their wages and

---

[1] Section 10(j) provides: "The Board shall have power, upon issuance of a complaint . . . charging that any person has engaged in or is engaging in an unfair labor practice, to petition [a] United States district court . . . for appropriate temporary relief or restraining order."

[2] Section 1113(e) provides: "If during a period when the collective bargaining agreement continues in effect, and if essential to the continuation of the debtor's business, or in order to avoid irreparable damage to the estate, the court, after notice and a hearing, may authorize the trustee to implement interim changes in the terms, conditions, wages, benefits, or work rules provided by a collective bargaining agreement." 11 U.S.C. § 1113(e). One of the issues on appeal from the Bankruptcy Order is whether this provision even applies when the CBA is expired and the requirements arise out of an injunction, not the CBA itself.

[3] While the temporary Chapter 11 relief was in place, this Court, in affirming the Injunction, found that

3

benefits had not been restored. On December 23, 2013, the District Court granted the motion and ordered HealthBridge to: (1) comply with all the provisions of the 10(j) Injunction and the Contempt Order; (2) reinstate and maintain the previous wages, benefits, and other terms and conditions of employment that were in place on June 16, 2012; and (3) compensate employees for the aforementioned benefits since February 1, 2013 plus interest lost.[4] The Contempt Order provided that failure to comply would result in HealthBridge having to pay the Board $10,000 as well as a daily compliance fine of $500. Any subsequent additional violation of the Injunction would result in a fine of $5,000. Finally, the Contempt Order authorized the Board to file a motion for attorneys' fees and costs.

HealthBridge filed the instant appeal from the Contempt Order on December 23, 2013. On December 26, 2013, the District Court granted a partial emergency stay of the Contempt Order "to relieve HealthBridge of its obligations under the [Contempt Order] pending full briefing in this Court of the issues raised in [HealthBridge's] emergency motion." Joint App'x 17-18.

On February 3, 2014, the New Jersey Bankruptcy Court granted the Centers' request to permanently reject the terms of the parties' expired CBAs, which the Injunction of the Connecticut District Court had ordered the Centers and HealthBridge to re-implement. On February 5, 2014, HealthBridge moved in the District Court for relief from the Contempt Order pursuant to Federal Rule of Civil Procedure 60(b). On March 6, 2014, the Bankruptcy Court confirmed the Centers' Amended Plan of Reorganization, including a broad non-consensual third-party release for HealthBridge. Appeals from the Bankruptcy Court orders are currently pending in the United States District Court for the District of New Jersey.[5]

In a May 30, 2014 order, the District Court reaffirmed its conclusion that contempt was warranted, and denied HealthBridge's request for Rule 60(b) relief. *See* May 30, 2014 Order of the District Court (the "May 30 Order") at 4-5. The District Court concluded, however, that "[i]n view of the pending appeals of the Bankruptcy Court's recent decisions . . . as well as HealthBridge's expedited appeal of the contempt order, a stay of further proceedings . . . until the appeals are decided" was appropriate. *Id.* at 11. At that point the parties would have the opportunity to re-brief

---

HealthBridge and the Centers had not established a "risk of financial ruin from the terms of the prior CBA" because "the Centers already have filed for bankruptcy protection in the Bankruptcy Court for the District of New Jersey, and that court has since authorized and extended modifications to the CBA pursuant to 11 U.S.C. § 1113(e)." *Kreisberg I*, 732 F.3d at 143.

[4] Specifically, the District Court found that HealthBridge refused to: (a) provide employees with paid lunch break until July 2013; (b) pay employees overtime; (c) allow employees to accrue sick leave at pre-June 16, 2103 accrual rates; (d) provide employees with health insurance at no monthly cost; (e) contribute to the Union pension and training funds; (f) pay a yearly uniform allowance; (g) allow employees to accrue paid personal days; and (h) pay employees wages on a weekly, rather than biweekly basis.

[5] HealthBridge has filed a motion to intervene.

4

the viability of the Contempt Order and the Injunction.[6] *Id.* This timely appeal followed.

On June 26, 2014, the day this appeal was set to be argued, the Supreme Court issued an opinion in *National Labor Relations Board vs. Noel Canning*, --- U.S. ---, 134 S.Ct. 2550 (June 26, 2014), invalidating three so-called "recess appointments" to the Board made by President Obama on January 4, 2012, during a three-day break between pro forma sessions of Congress. *See id.* at 2574, 2578. HealthBridge had preserved the argument that invalidation of these recess appointments might abrogate this Court's earlier holding that the Board had a quorum when it delegated authority to the General Counsel to initiate § 10(j) petitions.[7] Accordingly, we ordered supplemental briefing on the effect *vel non* of the *Noel Canning* decision on this case. We address this preliminary issue first.

## DISCUSSION

### A.    The Validity of the Section 10(j) Petition

HealthBridge argues that the Supreme Court's recent holding in *Noel Canning* calls into question this Court's prior holding that "the General Counsel properly authorized and filed the § 10(j) petition in this case pursuant to the Board's 2001 and 2002 Delegations [of that authority]" and that "the delegation of § 10(j) authority to the General Counsel at issue survives even when the Board subsequently lacks a quorum." *Kreisberg I*, 732 F.3d at 140. In light of that conclusion, we found it unnecessary to address "the validity of the January 4, 2012 recess appointments," *id.,* which the Supreme Court subsequently invalidated in *Noel Canning*.

As appellants concede, the Supreme Court's narrow holding in *Noel Canning* does not disturb the validity of the 2001 and 2002 Delegations. *See* Appellee Supp. Br. 7-8. The opinion in no way undercuts this Court's conclusion that such delegated authority would survive a subsequent loss of a quorum. Accordingly, the law of the case, as set forth in *Kreisberg I*, stands, and we proceed to the appeal from the Contempt Order.

### B.    The Contempt Order

As an initial matter, the parties disagree as to whether this Court has jurisdiction over HealthBridge's appeal from the Contempt Order. With limited exceptions, "[o]ur appellate jurisdiction is limited to final decisions," meaning "one that conclusively determines the rights of the parties to the litigation, leaving nothing for the district court to do but execute the order." *Forschner Grp., Inc. v. Arrow Trading Co., Inc.*, 124 F.3d 402, 410 (2d Cir. 1997). Generally, where "civil contempt

---

[6] In granting the stay, the District Court "clarif[ied] that if the Bankruptcy Court's order is reversed, Healthbridge will not be responsible for any compensatory damages that accrued between the date of the Bankruptcy Court's order and the date of the reversal." May 30 Order at 12.

[7] The NLRA mandates a five-member board and a three-member quorum. *See* 29 U.S.C. § 153. In the absence of a lawfully appointed quorum, the Board cannot exercise its powers. *New Process Steel, L. P. v. NLRB*, 560 U.S. 674, 687-688 (2010).

proceedings are instituted after the conclusion of the principal action . . . the order disposing of the contempt proceedings is appealable as a final decision . . . under 28 U.S.C. § 1291." *Latino Officers Ass'n City of New York, Inc. v. City of New York*, 558 F.3d 159, 163 (2d Cir. 2009) (internal quotation marks omitted).

The Contempt Order at issue was granted after the conclusion of the principal action—*i.e.*, following the entry of the Injunction. Ordinarily, a contempt order that, as here, "direct[s] appellant to purge itself of civil contempt by fully complying with [a prior] injunction order and upon failure to do so, to pay a fine . . . for every day it continued in noncompliance with that order" would be appealable under § 1291. *Vincent v. Local 294, Int'l Bd. of Teamsters*, 424 F.2d 124, 127 (2d Cir. 1970). *Accord United States v. O'Rourke*, 943 F.2d 180, 186 (2d Cir. 1991). We have found it necessary to review such orders, even when the exact scope of the contempt order remains to be decided by the district court, where declining jurisdiction "would effectively foreclose any review of the issues involved in the contempt order and leave [the appellant] subject to continuing liabilities under the civil contempt order." *O'Rourke*, 943 F.2d at 186 (internal quotation marks omitted).

Central to our case law regarding the finality of contempt orders is the need to balance judicial economy—declining to review orders where subsequent district court action may modify, moot, or multiply the issues on appeal—against the need to review orders that will be effectively unreviewable at a later stage. Were the Contempt Order to go into immediate effect, the balance would favor exercising jurisdiction, notwithstanding the remaining determinations regarding fees and backpay, because HealthBridge would be immediately subject to an "unconditional present sanction"—"the threat of fines"—if it failed to conform its behavior in accordance with the Contempt Order. *O'Rourke*, 943 F.2d at 186 (quoting *Sizzler Family Steak Houses v. Western Sizzlin Steak House, Inc.,* 793 F.2d 1529, 1533 n. 2 (11th Cir. 1986)). *Cf. Latino Officers*, 558 F.3d at 163 (contempt orders are appealable where no further district court action is necessary to "give life" to the order). These are not, however, the circumstances presented here.

The District Court did not immediately implement the Contempt Order. Rather, "[i]n view of the pending appeals of the New Jersey Bankruptcy Court's recent decisions . . . as well as HealthBridge's expedited appeal of the contempt order" to our Court, it stayed all further proceedings until the appeals are decided. May 30 Order at 11. It stated that it would then permit the parties to re-brief the viability of the Contempt Order and the Injunction. *Id.*

We agree that the ultimate outcome of the bankruptcy proceedings in the District Court of New Jersey, and possibly the Third Circuit, may affect the continuing viability of the Injunction Order and the Contempt Order, and conclude that the District Court is best-equipped to address this in the first instance. Moreover, postponing review until the bankruptcy appeals are complete and the District Court of Connecticut has had the opportunity to revisit the issues will ensure that the record on appeal is complete, and avoid piecemeal review of the various issues in this case.

6

Finally, as long as the Contempt Order remains stayed, HealthBridge is not subject to any "present sanctions" requiring immediate review.

In sum, despite appearing "final" on its face, the circumstances surrounding the Contempt Order—the bankruptcy proceedings in New Jersey, the Connecticut District Court's grant of a stay pending finality of those proceedings, and its stated willingness to revisit the Contempt Order in light of the outcome—render it inappropriate for appellate review at this stage. Accordingly, we decline, *at this time*, to exercise jurisdiction over this appeal. Once the bankruptcy appeals are complete in the District of New Jersey, and possibly the Third Circuit, and the Connecticut District Court has had the opportunity to revisit its earlier orders, we may, if such a request is timely made, review the Contempt Order at that time.

## CONCLUSION

For the reasons set out above, we **DISMISS** the appeal from the December 23, 2013 judgment of the District Court.

Any further appeals in this action shall be referred to this panel, in the interest of judicial economy.

The mandate shall issue forthwith.

FOR THE COURT,
Catherine O'Hagan Wolfe, Clerk of Court